# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2022AP2060-CR

†Petition for Review filed

Complete Title of Case:

**STATE OF WISCONSIN,**

    **PLAINTIFF-RESPONDENT,**

    **V.**

**JOHN J. DRACHENBERG,**

    **DEFENDANT-APPELLANT.†**

| | |
|---|---|
| Opinion Filed: | October 12, 2023 |
| Submitted on Briefs: | May 11, 2023 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Blanchard, Graham, and Nashold, JJ. |
| Concurred: | |
| Dissented: | |

Appellant
ATTORNEYS:      On behalf of the defendant-appellant, the cause was submitted on the briefs of *Christina C. Starner*, Green Bay.

Respondent
ATTORNEYS:      On behalf of the plaintiff-respondent, the cause was submitted on the brief of *John D. Flynn*, assistant attorney general, and *Joshua L. Kaul*, attorney general.

COURT OF APPEALS
DECISION
DATED AND FILED

October 12, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP2060-CR**

Cir. Ct. No. **2021CF264**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JOHN J. DRACHENBERG,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Wood County: TODD P. WOLF, Judge. *Affirmed*.

Before Blanchard, Graham, and Nashold, JJ.

¶1 BLANCHARD, J. This appeal involves the meaning of "execute[]" in the statute that sets a five-day deadline for police to execute a search warrant. *See* WIS. STAT. § 968.15(1) (2020-21) ("A search warrant must be executed and returned not more than 5 days after the date of issuance."); *see also* § 968.15(2)

("Any search warrant not executed within the [five-day deadline] provided in [§ 968.15(1)] shall be void and shall be returned to the judge issuing it.").[1] John Drachenberg appeals the judgment of conviction that followed his guilty plea to one count of possession of child pornography. Drachenberg argues that the circuit court erred in denying his motion to suppress evidence based on what he contends was the failure of police to execute a search warrant within five days after a court issued the warrant to search his residence and seize digital devices there.

¶2 Drachenberg does not dispute that the search and seizures occurred within five days after the warrant was issued. Nor does he argue that the execution exceeded the scope of the warrant. But, under his interpretation of WIS. STAT. § 968.15(1), police violated the statute when they took the third of the following three steps: (1) submitting an affidavit for a search warrant, which the circuit court issued on the same day; (2) three days later, searching the designated places and seizing several digital devices, copying digital content stored on the devices, and taking both original and copied materials off-site in order to conduct forensic analysis that was authorized in the warrant; and (3) not until almost two months after the warrant was issued, completing the off-site forensic analysis.

¶3 We conclude that the circuit court properly denied the motion to suppress, because the deadline to execute a search warrant in WIS. STAT. § 968.15(1) applies to the search of the places, and seizure of the items, designated in a search warrant and does not apply to later, off-site analysis of those items that is also authorized in the warrant. In some cases, the later, off-site analysis of seized items can be challenged as unreasonably delayed under the Fourth Amendment. But

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

here Drachenberg does not rely on the Fourth Amendment. Instead he argues only that the circuit court misinterpreted "executed" in § 968.15(1). Accordingly, we affirm.

## BACKGROUND

¶4 Police submitted to the circuit court on January 29, 2021, an affidavit requesting a warrant authorizing a search of Drachenberg's residence for designated items allegedly containing child pornography. *See* WIS. STAT. § 968.12(2) ("Warrant upon affidavit"). The detailed affidavit included the following allegations. An online platform provider passed information to law enforcement that included the internet protocol address of one platform user who allegedly streamed a video containing child pornography. Law enforcement determined that the user's internet protocol address was associated with Drachenberg's residence in Marshfield. The affidavit was based in part on the detective's averred knowledge, training, and experience regarding the nature of how digital data is generally stored on various devices and more specifically how child pornography is transferred and possessed. The affidavit requested authority to search Drachenberg's residence, as well as all of the associated buildings and vehicles owned or controlled by occupants of the residence. It further requested permission to "[s]eize and remove from the premises any computers, computer storage media and any other electronic device"—including, for example, cell phones and modems—and then, after the search had been completed, to forensically analyze the contents of the devices at off-site locations, *i.e.*, places other than the place of the search.

¶5 The circuit court issued the search warrant on the same day it was requested. The warrant described in detail the types of items that police were authorized to search for, and to seize, on the designated premises. It also specifically

authorized the following: "the media … and data contained" in the seized devices "may be forensically analyzed at a law enforcement facility at a later date in order to examine the contents for contraband or other evidence." Similarly, the warrant authorized police to (1) "Obtain exact forensic copies of the [digital] contents of … any seized device … for the purpose of permitting and conducting a full or partial digital forensic analysis," and (2) "Conduct a forensic examination/analysis of the devices or the contents of the devices, using accepted digital forensic examination tools and techniques." Regarding both of these investigative steps, the warrant stated that "[t]**he Court authorizes those items to be removed from the premises and analyzed at a later time for this purpose.**" (Bolding in original.)

¶6 On February 1, 2021, police searched the places designated in the warrant and seized numerous digital devices, including a desktop computer belonging to Drachenberg.

¶7 Also on February 1, police: observed some of the digital contents of devices that were seized; completed and filed with the circuit court a return and an inventory sheet listing the physical items seized during the search; and began "mirror imag[ing]" the hard drive of Drachenberg's computer.[2]

---

[2] "A forensic image, also known as a 'mirror image,' will 'replicate bit for bit, sector for sector' all allocated and unallocated space on a computer's hard drive, including any embedded, residual, and deleted data. A mirror image copy represents a snapshot of the computer's record." *Allied Debt Collection of Va., L.L.C. v. Nautica Entm't, L.L.C.*, 2019-Ohio-4055, ¶27, 146 N.E.3d 1222 (Ct. App.) (quoted source omitted); *see also United States v. Ganias*, 824 F.3d 199, 202 n.5 (2d Cir. 2016). This process is referred to in the affidavit here as creating "an exact copy of the contents of the hard drive of the computer being examined," which in turn police planned to examine "using specialized computer software."

¶8 Drachenberg emphasizes, however, that the forensic analysis of the seized devices, which amounted to 14 terabytes (or 14 trillion bytes) of data, was not completed until March 29, 2021.[3]

¶9 The State filed a criminal complaint in April 2021, charging Drachenberg with seven counts of violating WIS. STAT. § 948.05(1)(b) ("Sexual exploitation of a child") and three counts of violating WIS. STAT. § 948.12(1m) ("Possession of child pornography").[4] The charges were based on allegations that between May 1, 2020, and February 28, 2021, Drachenberg recorded and displayed, by streaming online, videos depicting children engaged in sexually explicit conduct, with knowledge of the character and content of the sexually explicit conduct involving the children. The complaint further alleged that police believed that approximately 272 image files and five video files found on his computer constitute child pornography.

¶10 Drachenberg moved to suppress the images and videos. Pertinent to this appeal, he argued that officers did not fully execute the warrant within five days after it was issued as required by WIS. STAT. § 968.15(1), because the forensic

---

[3] We note for context that it is not clear when, based on the undisputed testimony at a hearing on Drachenberg's suppression motion, investigators completed the process of mirror imaging Drachenberg's computer. Similarly, it is not clear from the record how much of the investigators' examinations of Drachenberg's computer were done through examination of data that had been mirror imaged from his computer's hard drive, as opposed to through direct examination of his computer. In any case, as the issues are argued by the parties these details do not affect our analysis of the statutory requirements of WIS. STAT. § 968.15(1).

On a related note, the parties do not address the potential issue of whether images in the seized devices that police observed *before* the five-day period lapsed should be suppressed if Drachenberg's interpretation of WIS. STAT. § 968.15(1) is correct, but we need not address that potential issue given our interpretation of the statute.

[4] Drachenberg was also charged with two counts related to possession of controlled substances and related paraphernalia that were later dismissed and read in; those charges are not at issue in this appeal.

analysis of the digital devices authorized in the warrant was not completed until almost two months after the warrant was issued. Therefore, he argued, the warrant was "void" under § 968.15(2), and all evidence collected pursuant to the warrant must be suppressed. The circuit court denied Drachenberg's motion to suppress, based on its conclusion that the search warrant was "executed" within the meaning of the statute within five days.

¶11 Following the circuit court's denial of his suppression motion, Drachenberg pleaded no contest to one count of possession of child pornography in violation of WIS. STAT. § 948.12(1m). Drachenberg appeals, as he is permitted to do under these circumstances, following entry of the conviction based on his plea. *See* WIS. STAT. § 971.31(10).

## DISCUSSION

¶12 To repeat, WIS. STAT. § 968.15(1) states, "A search warrant must be executed and returned not more than 5 days after the date of issuance."[5] Drachenberg argues that, under a plain-meaning interpretation of this sentence, police must complete within five days all tasks that the issuing judge has authorized in a search warrant, including the later, off-site forensic analysis of all seized items. Applied here, he contends, because the warrant includes the off-site forensic analysis in its description of what it authorizes police to do, all of that analysis had

---

[5] As context to the "and returned" aspect of WIS. STAT. § 968.15(1), we note that WIS. STAT. § 968.17(1) provides in part:

> The return of the search warrant shall be made within 48 hours after execution to the clerk designated in the warrant. The return shall be accompanied by a written inventory of any property taken.

Neither side in this appeal argues that any interpretation of the word "return" in § 968.15(1) or any closely related statute could shed light on their dispute as to the meaning of the word "executed" in § 968.15(1).

to be completed within five days. Because the analysis was not completed for nearly two months, the argument continues, the warrant was void and the circuit court should have suppressed all evidence produced through the analysis of his computer.

¶13     The State argues in pertinent part that, when WIS. STAT. § 968.15(1) is interpreted in context with closely related statutes, what must be executed within five days is limited to the following:  all searching conducted in the places designated in the warrant and all seizures of physical items designated in the warrant that occur during that searching.  Under this view, the time limitation does not apply to later, off-site testing and analysis of validly seized items, even when that testing and analysis is separately authorized by the warrant.  As we explain further below, we agree with the State.[6]

¶14     Before beginning our analysis by summarizing pertinent legal standards, we emphasize that in this appeal Drachenberg relies solely on the five-day time limit in WIS. STAT. § 968.15(1).  He does not allege a violation of his Fourth Amendment rights.  Specifically, Drachenberg does not raise a constitutional argument that the manner or duration of the retention and analysis of the data found on his seized digital devices rendered the warrant's execution unreasonable.  *See Dalia v. United States*, 441 U.S. 238, 258 (1979) ("[T]he manner in which a warrant is executed is subject to later judicial review as to its reasonableness."); *State v. Sveum*, 2010 WI 92, ¶19, 328 Wis. 2d 369, 787 N.W.2d 317 (the Fourth Amendment "requires that warrants be reasonably executed"); *see also United States v. Jarman*, 847 F.3d 259, 266 (5th Cir. 2017) (rejecting argument that 23-

---

[6] Because we conclude that police did not violate WIS. STAT. § 968.15(1), we need not and do not address the State's alternative argument that suppression is not merited because any violation of § 968.15(1) did not affect Drachenberg's substantial rights.  *See* WIS. STAT. § 968.22 ("No evidence seized under a search warrant shall be suppressed because of technical irregularities not affecting the substantial rights of the defendant.").

month delay after seizure in reviewing seized data was unreasonable); ***State v. Gant***, 2015 WI App 83, ¶14, 365 Wis. 2d 510, 872 N.W.2d 137 (assuming without deciding that a 10-month delay in retaining seized computer rendered its seizure unlawful). Similarly, Drachenberg does not contend that delay in analyzing the data resulted in the dissipation of the probable cause that evidence of a crime would be found on his computer. *See **United States v. Brewer***, 588 F.3d 1165, 1173 (8th Cir. 2009) (limiting reasonability analysis under Fourth Amendment to whether delay in analyzing seized data "rendered the warrant[] stale").

¶15    Bearing in mind the narrow scope of Drachenberg's challenge to the circuit court's suppression ruling, we turn to standards of review. We review de novo issues regarding the proper interpretations of statutes. ***State v. Peters***, 2003 WI 88, ¶13, 263 Wis. 2d 475, 665 N.W.2d 171. Statutory interpretation "begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "Context is important to meaning" in addition to "the structure of the statute in which the operative language appears." ***Id.***, ¶46. "Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statues; and reasonably, to avoid absurd or unreasonable results." ***Id.***

¶16    No precedent in Wisconsin case law has interpreted the meaning of execution of a search warrant under WIS. STAT. § 968.15(1) and whether the statute imposes the five-day deadline on all tasks authorized in the warrant, including later, off-site analysis of items lawfully seized under the warrant.

¶17     As Drachenberg notes, "executed" is not explicitly defined in the Wisconsin Statutes, and in the absence of a specialized or technical meaning, we consider the ordinary, accepted meaning of the word. *See **Bruno v. Milwaukee County***, 2003 WI 28, ¶¶8, 20, 260 Wis. 2d 633, 660 N.W.2d 656. "When interpreting a statute, a court may consult dictionary definitions to ascertain the meaning of a term." ***State ex rel. Bryson v. Carr***, 2022 WI App 34, ¶23, 404 Wis. 2d 307, 978 N.W.2d 595.

¶18     Drachenberg starts with a premise we agree with: the word "execute" generally conveys the concept of completion. That is, the ordinary, common understanding of execute requires the "completion" of some task or event. *See Execute*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("To perform or complete."); *Execute*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/execute (last visited Oct. 9, 2023) ("to carry … out[;] put … completely into effect"). But from that premise, Drachenberg takes a leap that is too big regarding what it is that must be completed in this context. He contends that WIS. STAT. § 968.15(1) dictates that what must be completed is the entirety of the tasks authorized by a search warrant, and is not limited to tasks involving the search of designated places and the seizures of designated items in those places. This is not a proper interpretation of "executed" in § 968.15(1), because as we now explain, closely related statutes show that it refers to the search of the designated places and seizure of the designated items and not to the later, off-site analysis of the seized items.

¶19     "A search warrant is an order signed by a judge directing a law enforcement officer to *conduct a search* of a designated person, a designated object or a designated place *for the purpose of seizing designated property or kinds of property*." WIS. STAT. § 968.12(1) (emphasis added). Based on this definition, a

9

search warrant is completely put into effect and its purpose is accomplished under WIS. STAT. § 968.15(1) when the designated places are searched and the designated items are seized. This undermines Drachenberg's interpretation of "executed" in § 968.15(1).

¶20 In a similar vein, as the State notes, WIS. STAT. §§ 968.12(3)(f) and 968.16 are instructive. These statutes are closely related to WIS. STAT. § 968.15 because they are found in the same chapter and use similar terms, which include variations on the word "executed" in the context of search warrants. *See State v. Reyes Fuerte*, 2017 WI 104, ¶27, 378 Wis. 2d 504, 904 N.W.2d 773 ("Statutes are closely related when they are in the same chapter, reference one another, or use similar terms"; "[b]eing within the same statutory scheme may also make two statutes closely related.").

¶21 Under WIS. STAT. § 968.12(3)(f), as part of the procedure for applying for a warrant based on oral testimony, "[t]he person who executes the warrant shall enter *the exact time of execution* on the face of [a] duplicate original warrant." (Emphasis added.) This timing reference provides support for the view that, for purposes of WIS. STAT. ch. 968's procedural search warrant provisions, execution contemplates a more limited period of time than will sometimes be needed for the post-seizure analysis of seized items—particularly in the age of high-powered microscopes and both molecular (*e.g.*, DNA) and digital evidence.

¶22 The concept of executing a warrant is referenced again in WIS. STAT. § 968.16, which states: "The person *executing* the search warrant may reasonably detain and search any person *on the premises at the time* to protect himself or herself from attack or to prevent the disposal or concealment of any item particularly described in the search warrant." (Emphasis added.) "The time" at issue here has

only one reasonable interpretation: during the searches of places and seizures of items authorized by the warrant. Similarly, "the premises" clearly references the place designated to be searched and not, for example, places where the seized items may be analyzed. Otherwise, if the execution of the warrant were interpreted to include subsequent analysis of seized items that have been removed from the scene of the search, it would suggest, illogically, that police have the authority to detain persons after the police have already left the designated places (in the words of § 968.16, "the premises") after completing the search.[7]

¶23 In response to the State's arguments based on closely-related statutes, Drachenberg does not contest that WIS. STAT. §§ 968.12 and 968.16 are closely related to WIS. STAT. § 968.15(1), nor does he develop an argument addressing any closely related statute.[8] Instead, Drachenberg directs us to two Wisconsin court

---

[7] The State also cites to WIS. STAT. § 968.14 as a closely related statute supporting its interpretation as to when a warrant must be executed under WIS. STAT. § 968.15. But we now explain why § 968.14 is less clear in referring to the timing aspects of a warrant's execution. Under § 968.14: "All necessary force may be used to execute a search warrant or to effect any entry into any building or property or part thereof to execute a search warrant." Some potential applications of this provision suggest that the execution contemplated in WIS. STAT. ch. 968 involves a timeframe consistent with the State's interpretation, which could include the entry of places designated in the warrant to search for, and seize, designated items. This plainly contemplates at least in part the use of physical force to breach fences, doors, and the like. But it is not clear that, at least when considered in isolation, § 968.14's reference to use of force might not also contemplate, for example, breaking into a locked container after it has been seized and removed from the place designated to be searched in the warrant. Because of the potential ambiguity in the timing of when the force authorized by § 968.14 takes place, we do not delve further into this topic and conclude that this statute does not affect our analysis.

[8] Drachenberg may mean to suggest that closely-related statutes are "extrinsic sources," and that we may not consult them because "executed" is unambiguous in this context. To the contrary, as noted in the text above, closely related statutes may be proper sources of authority in determining the meaning of WIS. STAT. § 968.15(1) under a plain language interpretation, which includes the determination of whether a term is ambiguous or not. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110 ("statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; *in relation to the language of surrounding or closely-related statutes*; and reasonably, to avoid absurd or unreasonable results" (emphasis added)).

opinions that he argues "belie[] the argument that execution of a warrant is the moment of initial entry for all purposes." But as we now explain, a review of these opinions reveals that Drachenberg merely knocks down a straw-figure argument. More specifically, Drachenberg correctly but to no avail establishes that "executed" in this context involves activity extending beyond the moment when police enter a designated place to conduct searches for designated items.

¶24     In *State v. Herrmann*, 2000 WI App 38, 233 Wis. 2d 135, 608 N.W.2d 406, officers conducted a search of an apartment unit pursuant to a warrant. *Id.*, ¶3. In doing so, they unlocked and walked through a door into what they believed was another door within the same apartment (but which was in fact a door into a neighboring unit), finding what they believed to be a marijuana grow operation. *Id.*, ¶¶4-5. We concluded that it was reasonable for officers, as part of "the continued execution of [a valid] warrant" for the first apartment, to extend their search into the neighboring unit that "they mistakenly, but reasonably, believed was another room" of the first apartment. *See id.*, ¶17. We agree with Drachenberg that this aspect of *Herrmann* suggests that the execution of a search warrant includes the full duration of the search of the designated places pursuant to the warrant, not only the initial entry to the premises. But this is entirely consistent with our interpretation of WIS. STAT. § 968.15(1) in light of WIS. STAT. § 968.12 and other closely related statutes.

¶25     In *Sveum*, 328 Wis. 2d 369, our supreme court addressed police use of a Global Positioning System tracker attached to the defendant's car for 35 days, pursuant to a search warrant authorizing the tracking. *See id.*, ¶¶5-10, 12. Drachenberg notes that the court referred to the 35-day period of location-data gathering as being part of the "execution" of the search warrant authorizing the use of the GPS unit. *See id.*, ¶59 (referring to the installation, monitoring for 35 days,

and removal of GPS unit from defendant's car as "[e]xecution … within the confines of the authority granted" by the search warrant). Further, the court stated that under these facts the warrant was not executed and returned within the five-day deadline in WIS. STAT. § 968.15. *Sveum*, 328 Wis. 2d 369, ¶71 (concluding that defendant's substantial rights were not violated "by the officers' failure to execute and return the warrant within 5 days after the date of issuance").[9] But this again demonstrates that the continued search and seizure of items pursuant to a warrant is part of the execution of the warrant, without addressing the later, off-site analysis at issue here. Officers here, unlike in *Sveum*, finished their search for and seizure of the items designated in the warrant within the five-day time limit, and there was nothing resembling continuous data gathering, through a police-operated device attached to the defendant's car, for 35 days.

¶26 We now address a core point made by Drachenberg and why it is unavailing. It involves the fact that warrants and supporting affidavits may describe investigative activity that may occur *after* the initial searches and seizures that the warrant authorizes; indeed, here the warrant and affidavit did this. In such cases, the affidavit anticipates, and the warrant authorizes, that police will undertake tasks that can include review and analysis of seized items—tasks that in themselves could require prior judicial permission if no Fourth Amendment exception applies. Thus

---

[9] Since *State v. Sveum*, 2010 WI 92, 328 Wis. 2d 369, 787 N.W.2d 317, our supreme court has clarified that warrants authorizing the use of GPS tracking are not subject to the warrant-related statutes in WIS. STAT. ch. 968. *State v. Pinder*, 2018 WI 106, ¶¶39-42, 384 Wis. 2d 416, 919 N.W.2d 568 (explaining in part that *Sveum* "supports the conclusion that courts have the authority to issue GPS warrants even though a technical irregularity is present under" WIS. STAT. § 968.15 rather than setting precedent that ch. 968 applied to GPS warrants). Nonetheless, for current purposes we cannot ignore that the *Sveum* court apparently considered the continuous gathering of data, using a device attached to the defendant's car and pursuant to the warrant at issue in that case, to be part of the execution of the warrant for purposes of § 968.15(1). *See Zarder v. Humana Ins. Co.*, 2010 WI 35, ¶¶54, 58, 324 Wis. 2d 325, 782 N.W.2d 682 (court of appeals cannot disregard statement from case law of our supreme court on the grounds that it is dicta). Rather, as we explain in the text, this aspect of *Sveum* is distinguishable from the facts here.

here, as Drachenberg emphasizes and as we have summarized above, the warrant describes in detail additional authorized investigative steps planned to occur after the search for, and seizure of, physical items from Drachenberg's residence, outbuildings, and vehicles: "Conduct a Forensic examination/analysis of the devices or the contents of the devices, using accepted digital forensic examination tools and techniques" and "obtain exact forensic copies of the contents of the hard drive(s) or internal storage media or operating system of any seized device and the contents of any seized external storage media …." The warrant further authorized that the seized items "be removed from the premises and analyzed at a later time for th[ese] purpose[s]." (Emphasis omitted.) "[A]t a later time" specifically signals that all this is anticipated to occur after the warrant has been executed.

¶27 Drachenberg's reliance on this aspect of the affidavit and the warrant fails on several levels. First, as he acknowledges, the contents of the warrant here do not, at least in any direct sense, inform our plain-language interpretation of when a warrant is "executed" under WIS. STAT. § 968.15(1), which as we have explained does not favor Drachenberg's interpretation. Further, even if the contents of the warrant here could inform our understanding of § 968.15(1), we conclude that they are consistent with our interpretation.

¶28 The details in the affidavit and warrant here regarding later, off-site analysis reflects the reality that warrants are subject to requirements beyond the specific statutory boundaries created by WIS. STAT. §§ 968.12(1) and 968.15(1). There are additional requirements that affidavits and warrants must address in order to permit law enforcement to obtain viable search warrants from judges. For example, the affidavit and proposed warrant must provide the judge with a sufficient basis for a finding of probable cause needed to seize data-storing devices and then to search through their contents. This requires references to anticipated next steps

14

in the investigation as a whole that could ultimately lead to the existence of admissible evidence of a suspected crime. *See* § 968.12(1) (judge to "issue a search warrant if probable cause is shown"); *see also **State v. Pinder***, 2018 WI 106, ¶¶48-51, 384 Wis. 2d 416, 919 N.W.2d 568 (listing constitutional requirements for contents of a warrant, including setting forth facts showing a "'fair probability that contraband or evidence of a crime will be found in a particular place'" (quoted source omitted)); ***State v. Burch***, 2021 WI 68, ¶¶37, 84, 92, 398 Wis. 2d 1, 961 N.W.2d 314 (four justices, through two concurrences, stating that law enforcement must generally obtain a warrant to search cell phone data (citing ***Riley v. California***, 573 U.S. 373, 403 (2014))), *cert. denied*, 142 S. Ct. 811 (2022). Thus here, the detailed description of anticipated later, off-site analysis of the items to be seized assisted the reviewing judge in determining that police had a fair probability of uncovering evidence of crime through a process that would begin with the search of the designated places and the seizure of digital devices. This provided an explanation for the reviewing judge as to how the contents of the seized items could become potential evidence of a crime, which in turn allowed the judge to tailor the warrant to direct police to maintain a reasonable scope in their searches and to minimize unnecessary intrusions into private areas. *See **Sveum***, 328 Wis. 2d 369, ¶¶27-28 (warrants are constitutionally required to identify the place to be searched and items to be seized with particularity, which in part serves the purpose of preventing a "general search[]," *i.e.*, reducing unjustified government intrusion).

¶29 Moreover, the details in the affidavit and warrant also reflect the practical reality that, while police must conduct the searches of places and seizures of items that a warrant authorizes within five days, they may seek further authority in the warrant to conduct off-site forensic analysis, which need not occur within the five days. The affidavit and warrant do not describe the forensic analysis as a

continuing execution of the search warrant. Instead, according to the affidavit, the forensic analysis is additional government conduct needed to determine the nature of the seized items as part of the overall investigation of which the initial search and seizure are only two elements. Consistent with our interpretation, the affidavit here transparently alerted the reviewing judge that the anticipated forensic analysis would be "complicated and time-consuming" and therefore would need to be conducted off-site, after execution of the warrant was complete. Indeed, it is difficult to understand how the legislature could have intended to require all of the sometimes complicated and time-consuming tasks involved in carefully analyzing seized evidence be completed within five days in all cases, regardless of the circumstances. *See Kalal*, 271 Wis. 2d 633, ¶46 (statutes are to be interpreted to avoid unreasonable or absurd results). In contrast, it is easy to understand a legislative intent in requiring searches of designated places and seizures of designated items to occur within five days.

¶30 Explaining further, in treating the affidavit and warrant as descriptions of all tasks that police must complete within five days, Drachenberg loses sight of the fact that the search for, and seizure of, physical items pursuant to a warrant is always only one part of a criminal investigation. Subject to whatever constitutional limits may apply, police are entitled to attempt to bolster the case for probable cause by obtaining authorization to analyze any seized item in a way that could be reasonably expected to reveal evidence of a crime. Police are also entitled to provide the issuing judge with context about how the seized items would be used to detect or prove a criminal offense. Under Drachenberg's interpretation, police could not seek an order authorizing planned next steps for seized items in the course of an overall investigation without creating a five-day window within which all analysis or examination of any seized item would have to be complete. If the legislature

intended that seemingly surprising result it would have used different language. *See id.*

¶31    At least at times, Drachenberg suggests that under WIS. STAT. § 968.15(1) police needed to obtain a second search warrant, supplying further probable cause justification, in order to conduct the later, off-site investigative steps—and perhaps a new warrant every five days thereafter, until all forensic analysis were completed. (Although we understand him to make this suggestion, it is a weakness of Drachenberg's briefing that we cannot discern what specifically would be required of police under his interpretation.) In any case, such an argument would fail because it depends on Drachenberg's interpretation of the statute that, for the reasons stated above, we do not adopt.[10] That is, because the analysis of the seized items authorized in the warrant was not subject to the five-day limit, police did not need to obtain additional warrants.

¶32    Further, we note that our interpretation of "executed" in WIS. STAT. § 968.15(1) comports with the evident purposes of § 968.15 to avoid unreasonable delay in executing validly issued warrants. *See State v. Edwards*, 98 Wis. 2d 367, 375, 297 N.W.2d 12 (1980) (five-day time limit in § 968.15 "represents a legislative

---

[10] On the topic of when multiple warrants are needed, the parties dispute the significance of two court opinions which state that an additional warrant is not needed to authorize the analysis of at least certain kinds of items seized pursuant to a valid warrant. *See State v. Petrone*, 161 Wis. 2d 530, 544-45, 468 N.W.2d 676 (1991) (investigators "were justified in developing" film because it was "lawfully seized pursuant to [a] warrant"), *overruled in part on other grounds by State v. Greve*, 2004 WI 69, 272 Wis. 2d 444, 681 N.W.2d 479; *State v. VanLaarhoven*, 2001 WI App 275, ¶16, 248 Wis. 2d 881, 637 N.W.2d 411 ("the examination of evidence seized pursuant to the warrant requirement or an exception to the warrant requirement is an essential part of the seizure and does not require a judicially authorized warrant"). Drachenberg argues that these cases do not address his specific contention that police would need to obtain additional warrants to avoid violating the time limit in WIS. STAT. § 968.15(1). But as noted in the text, this dispute would come into play only if we had instead interpreted § 968.15(1) consistent with Drachenberg's position, or potentially if he were raising a Fourth Amendment challenge and not a statutory challenge. Accordingly, we need not address these opinions further.

recognition that execution of a search warrant within the five-day period satisfies any requirement" for timely execution, in addition to constitutional requirements of searches based on fresh probable cause). One purpose of the statute is to protect against police obtaining a warrant but then excessively delaying in executing it. *See* Judicial Council's Note, WIS. STAT. § 968.15, 1969 Wis. Laws ch. 255. This purpose is not undermined by interpreting the execution of a warrant to be the carrying out of a search in designated places and the seizure of designated items— officers have the same incentive to do those things within five days after the warrant is issued.

¶33 The State points out that another related and obvious purpose of the five-day time limit is to encourage searches and seizures authorized by warrants before the probable cause alleged in the affidavit dissipates or becomes stale. *See People v. Schroeder*, 158 Cal. Rptr. 220, 222 (Ct. App. 1979) (the purpose of California statute requiring a search warrant be executed and returned within 10 days after issuance is "to insure that the showing of probable cause which supported issuance of a warrant will still exist at the time the warrant is executed.");[11] *see also* Judicial Council's Note, WIS. STAT. § 968.15, 1969 Wis. Laws ch. 255 (search warrants are ineffective in addressing criminal activity "if they are not promptly served"). This purpose is served by our interpretation of WIS. STAT. § 968.15(1): the statute gives police an incentive to search for and preserve evidence through the seizure of the designated items within the five days. This is particularly so for cases involving the seizure of devices with stored electronic data, because concerns over

---

[11] We find helpful discussion in case law from other jurisdictions that have addressed the same issue or a closely related issue, based on statutory language that matches the Wisconsin statute. *See State v. Harvey*, 2006 WI App 26, ¶20 & n.7, 289 Wis. 2d 222, 710 N.W.2d 482 (observing that "[w]e may look to other jurisdictions for persuasive authority where there are no Wisconsin cases directly on point" and noting cases from other states that have considered the same issue regarding the meaning of a term used in a criminal statute).

staleness are greatly diminished once the data has been preserved either through the seizure of physical devices or by taking the additional step of mirror-imaging them—at least in most cases, the data on the seized device will not change over time after seizure of the device. *See* 2 Wayne R. LaFave, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AM. § 4.7(a) (6th ed.); *State v. Monger*, 472 P.3d 270, 276 (Ct. App. Or. 2020) ("it would be anomalous to conclude that a seizure of an electronic device within five days was permissible [under OR. REV. STAT. § 133.565(3)] but that the subsequent search or analysis of the same electronic device that had been stored in an evidence room after weeks had elapsed somehow effected staleness concerns").

¶34 Drachenberg also directs us to federal case law, including one opinion cited in an unpublished decision of this court, for the purported proposition that a search warrant, in at least some contexts, is not "executed" until the completion of off-site analysis of seized items. Regarding one of these federal cases, we explained the following, with emphasis now added:

> In *United States v. Jarman*, 847 F.3d 259, 263, 266 (5th Cir. 2017), a child pornography case involving seizure of hard drives and a computer, the defendant argued that the court erred in refusing to grant suppression for violating the Fourth Amendment by taking twenty-three months to complete a search of the data it seized. According to the United States Fifth Circuit Court of Appeals, courts addressing this issue have "consistently 'permitted some delay *in the execution of search warrants* involving computers because of the complexity of the search' and they often restrict their 'analysis of the *delay in executing ...* warrants [to] consider[ing] only whether the delay rendered the warrants stale.'" *Id.* at 266 (alterations in original) (citing *United States v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009); *United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005)). Although the court noted that Jarman had not argued that the delay caused the warrant to become stale, it found that "'[n]umerous cases hold that a delay of several months' or even years 'between the seizure of electronic evidence and the completion of the government's review of

19

> [it] ... is reasonable' and does not render the warrant stale, especially in child-pornography cases." *Jarman*, 847 F.3d at 267 & n.3 ....

*State v. Plencner*, No. 2019AP517-CR, unpublished slip op., ¶19 (WI App Oct. 28, 2020) (emphasis added; alterations in *Plencner*; footnote omitted). Drachenberg apparently argues that this passage suggests that this court, following federal courts, has concluded that, under WIS. STAT. § 968.15(1) (and consistent with the 14-day warrant execution deadline in FED. R. CRIM. P. 41(e)(2)(A)(i)), whenever police hold and later analyze seized digital data, this is part of the execution of a search warrant.

¶35 Drachenberg's reliance on *Plencner* and *Jarman* fails for several reasons. First, these cases and their expansive references to the execution of warrants come in the context of *constitutional* challenges to police retention of seized digital devices, with defendants arguing that their Fourth Amendment rights were violated. *See Plencner*, No. 2019AP517-CR, ¶12 (defendant argued that trial counsel was constitutionally deficient for failing to move to suppress evidence based on contention that "the duration of the seizure of his computer was unreasonable under the Fourth Amendment"); *Jarman*, 847 F.3d at 266. As we have emphasized, Drachenberg expressly disclaims any argument based on the Fourth Amendment. Viewed in this way, we do not see how references in this potentially persuasive authority to the execution of a search warrant sheds light on the meaning of "executed" in WIS. STAT. § 968.15(1). Further, contrary to Drachenberg's interpretation of the federal case law, the Federal Rules of Criminal Procedure explicitly clarify that, in the context of seizures of electronically stored information, "[t]he time for executing a warrant" refers to the seizure or on-site copying of the

information, and not to "any later off-site copying or review."  *See* FED. R. CRIM. P. 41(e)(2)(B).[12]

¶36    Further, we agree with the State that the most relevant persuasive authority is consistent with, and its reasoning supports, our interpretation of WIS. STAT. § 968.15(1).  Courts that have addressed this issue in other states with identical or nearly identical statutes have reached the same conclusion, with the result that statutory time limits analogous to § 968.15(1) are not violated by subsequent searches of data in validly seized devices.  *See, e.g.*, ***State v. Sanchez***, 2020-NMSC-017, ¶¶13-14, 476 P.3d 889 ("a search warrant for information stored on an electronic device is executed for the purposes of [N.M. STATS. ANN.] Rule 5-211(C) when that device is seized or when the data stored on that device is copied on site"); ***State v. Nadeau***, 2010 ME 71, ¶¶47-48, 1 A.3d 445 ("The execution of a search warrant is the act of lawfully searching for and taking possession of property as authorized by the warrant," and therefore no violation of ME. R. CRIM. P. Rule 41(d) when analyzed computer after 10-day limit); ***State v. Johnson***, 831 N.W.2d 917, 925 (Minn. Ct. App. 2013) (10-day deadline to execute warrant under MINN. STAT. § 626.15(a) did not apply to search and analysis of hard drive data because this was not a search under "the Fourth Amendment where the hard drive

---

[12] The pertinent language in FED. R. CRIM. P. 41(e)(2)(B) had been adopted by the time both of the federal cases that Drachenberg cites were decided.  *See* FED. R. CRIM. P. 41 advisory committee's note to 2006 amendment.  *See* ***United States v. Jarman***, 847 F.3d 259, 263 (5th Cir. 2017); ***United States v. Metter***, 860 F. Supp. 2d 205 (E.D.N.Y. 2012).

The same problems that we note in the text arise with Drachenberg's reliance on another federal case cited by Drachenberg, ***Metter***, in which a federal district court also uses the word "execute" in a more comprehensive manner.  But as in ***Jarman***, the court in ***Metter*** addresses the issue of whether a delay in analyzing already seized data was constitutionally reasonable.  *See* ***Metter***, 860 F. Supp. 2d at 215 (the following was unreasonable under the Fourth Amendment: 15 months after the government executed its search warrant, the government had not conducted its review of the evidence seized to determine whether any evidence fell outside the scope of the search warrant).

had been validly seized pursuant to a search warrant issued on probable cause"). While it is of course not dispositive to an interpretation of the Wisconsin statute, it is notable that Drachenberg does not cite a case from any jurisdiction in which a statutory time limit for the execution of a search warrant was deemed to have been exceeded due to the post-seizure analysis of seized items.

¶37    Drachenberg argues that our interpretation "leav[es] a gaping hole in the statutory law," allowing police to hold a seized computer for "weeks, months, or years without even beginning the search of the computer." This argument is unsupported by legal authority. Further, it fails to take into account either the statutory mechanisms for the return of seized items under WIS. STAT. § 968.20 or the constitutional protections against unreasonable delays of the kind to which Drachenberg alludes but does not contend occurred here. *See United States v. Metter*, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012) (holding that the government violated the Fourth Amendment when it seized and copied data, then retained it "with no plans whatsoever to *begin* review of" data for 15 months (emphasis in original)).

¶38    In sum, for purposes of applying WIS. STAT. § 968.15(1), police here "executed" the search warrant within five days after it was issued by finishing their search of the designated places for the designated digital devices and seizing them. The later, off-site analysis of these devices pursuant to the investigative path authorized by the warrant was not part of the warrant's execution.

## CONCLUSION

¶39    For all of these reasons, we affirm the challenged judgment of the circuit court.

22

*By the Court*.—Judgment affirmed.