**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 21, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP492-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2023CF591

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

AARON J. WILLIAMS,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Wood County: TIMOTHY S. GEBERT, Judge. *Affirmed.*

Before Graham, P.J., Blanchard, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Aaron J. Williams appeals a judgment of conviction for operating with a prohibited alcohol concentration as a fifth offense.

Williams challenges the circuit court's denial of his motion to suppress evidence based on the arresting officer's alleged failure to serve Williams with a copy of the warrant authorizing a blood draw. Because we conclude the circuit court did not err in this ruling, we affirm.

**Background**

¶2      At the hearing on Williams's motion to suppress, Officer Hunter Hintze testified as follows. On September 23, 2023, Hintze was working as a patrol officer with Marshfield Police Department when he observed a truck driven by Williams cross the center line multiple times. After Hintze stopped Williams and observed his bloodshot eyes, slurred speech, and odor of intoxicants, and after Williams admitted to consuming alcohol and refused to participate in field sobriety testing, Hintze placed Williams under arrest for operating a vehicle under the influence of an intoxicant. *See* WIS. STAT. § 346.63(1)(a) (2023-24).[1]

¶3      Williams then refused to consent to a blood draw. Hintze obtained a search warrant authorizing a blood draw that was signed by the on-duty judge. Hintze "presented the warrant to Mr. Williams" at the police station. He showed Williams a copy of the warrant, but did not give Williams a copy of it because Hintze "knew that [Williams] was going to be going down to the … [j]ail" and would not be allowed to have "anything on [his] person." Hintze did not capture video of himself showing the warrant to Williams with his body camera because Hintze forgot to turn his body camera back on after having turned it off to escort

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

Williams to the bathroom. The blood draw was subsequently performed without issue.

¶4 On cross-examination, Hintze testified that he did not recall whether Williams asked him for a copy of the search warrant. Hintze also could not recall how far away from Williams he had been when he showed Williams the search warrant or whether he had handed a copy of the warrant to Williams.

¶5 The circuit court denied Williams's motion to suppress, rejecting Williams's argument that the warrant requirement was not fulfilled and that suppression of Williams's blood draw evidence was therefore required. The court found that Hintze showed Williams the warrant, noting that Hintze's testimony on that point was not contradicted by other evidence. The court also determined that there was no requirement for law enforcement to physically hand the warrant to Williams in order to properly execute the warrant. Williams subsequently pled no contest to operating with a prohibited alcohol concentration as a fifth offense and was convicted of that offense.

**Discussion**

¶6 On appeal, Williams argues that the circuit court's "finding that the search warrant was 'in fact' shown to Mr. Williams is simply not true," and that display of the warrant from five feet away could not constitute "service." Williams further argues that, even if the warrant was shown to him, the officer's failure to physically hand Williams a copy of the warrant prior to conducting the blood draw violated his rights under the Fourth Amendment, WIS. STAT. § 968.15, and constitutional due process.

¶7 This court reviews a circuit court's order denying a motion to suppress in two steps. *State v. Roberson*, 2019 WI 102, ¶66, 389 Wis. 2d 190, 935 N.W.2d 813. First, we uphold the circuit court's findings of historical fact unless they are clearly erroneous. *Id.* Second, we apply constitutional principles to those facts independently. *Id.* Statutory interpretation also presents a question of law that we review independently. *State v. Popenhagen*, 2008 WI 55, ¶32, 309 Wis. 2d 601, 749 N.W.2d 611.

¶8 We first address Williams's argument that the record does not support the circuit court's finding that Hintze showed the warrant to him. Williams contends that Hintze actually "admitted that he could not recall one way or the other" whether he showed the warrant to Williams. He further asserts that Hintze "could not dispute" being five feet away from Williams "at the time if he did 'show' [the warrant] to [Williams]," because Hintze "could not 'recall' how far away he was."

¶9 A review of Hintze's testimony shows that, in fact, Hintze testified that he showed Williams a copy of the warrant and never qualified or retracted that statement. In response to the prosecutor's question of whether he showed the warrant to Williams, Hintze answered, "Yes." On cross-examination, when asked if he "hand[ed Williams] a copy of the warrant prior to his blood being drawn," Hintze responded that "[Williams] was shown the warrant." When asked the same question again, Hintze testified that he "[did] not recall" whether he handed a copy of the warrant to Williams. When asked whether Williams "ask[ed] … for a copy of the search warrant," Hintze replied that he could not "remember one way or the other." Thus, Hintze's testimony was clear and consistent: Hintze showed the warrant to Williams, but he did not remember whether he physically handed a copy of the warrant to Williams or whether Williams asked him to do so.

¶10 Regarding the distance from which Williams was shown the warrant, defense counsel asked, "You showed it to him at a distance of five feet, correct?" Hintze answered that he "didn't know" and "did not measure" how far away he was. Thus, there is no evidence in the record of the distance that Hintze and Williams were apart from one another when the warrant was shown, only defense counsel's assertion that the distance was five feet. Williams's contention that Hintze could not dispute this "fact" is therefore misplaced. We agree with the State that, based on the testimony discussed here, the circuit court's finding that Hintze showed the warrant to Williams is supported by the record and cannot be overturned as clearly erroneous. *See Lake Bluff Hous. Partners v. City of S. Milwaukee*, 2001 WI App 150, ¶18 & n.2, 246 Wis. 2d 785, 632 N.W.2d 485 (findings are not clearly erroneous when there is evidence in the record to support them). In addition, by not filing a reply brief, Williams implicitly concedes this factual argument. *See Apple Hill Farms Dev., LLP v. Price*, 2012 WI App 69, ¶14, 342 Wis. 2d 162, 816 N.W.2d 914 (stating that appellant's failure to file a brief in reply to respondent's cited authority may be treated as a concession).

¶11 We turn to Williams's argument that showing the warrant to Williams was insufficient because the law requires a search warrant to be physically served on the person being searched before it can be executed. First, Williams argues that execution of the warrant in this case violated his rights under the Fourth Amendment, which protects against unreasonable execution of a search warrant. *See United States v. Ramirez*, 523 U.S. 65, 71 (1998). Williams relies primarily on *Bumper*, a case in which the United States Supreme Court concluded that a person's consent to a search of her home was not freely and voluntarily given, and therefore not valid, when the consent was given after police officers falsely told her they had a search warrant. *Bumper v. North Carolina*, 391 U.S.

543, 549-50 (1968). The Fourth Amendment violation was not in the officers' failing to hand a warrant over to the person, but in their stating that they had a warrant when they did not in order to coerce consent for a warrantless search. *See id.* ***Bumper*** is simply not applicable to Williams's case, in which Hintze had a valid search warrant and did not need Williams's consent for a blood draw.

¶12 The State, on the other hand, points to cases recognizing that under certain circumstances, the Fourth Amendment's reasonableness standard may be met even when law enforcement does not show, let alone physically hand, a warrant to the person whose property or person is being searched before executing the warrant. In ***Groh v. Ramirez***, 540 U.S. 551, 562 n.5 (2004), the United States Supreme Court acknowledged that the Fourth Amendment does not always "require[] the executing officer to serve the warrant on the owner before commencing the search," noting that in conducting some searches, such as surreptitious wiretaps or searches of abandoned buildings, "it will be impracticable or imprudent for the officers to show the warrant in advance."

¶13 Similarly, in ***State v. Sveum***, our state supreme court rejected the argument that officers' execution of a warrant authorizing GPS tracking of a vehicle was unreasonable when they failed to provide notice of the warrant to the vehicle's owner prior to installing the tracking device. ***State v. Sveum***, 2010 WI 92, ¶¶61-62, 328 Wis. 2d 369, 787 N.W.2d 317. Citing ***Groh*** and ***Grubbs***, the court pointed out "the 'absence of a constitutional requirement that the warrant be exhibited at the outset of the search.'" ***Sveum***, 328 Wis. 2d 369, ¶62 (quoting ***United States v. Grubbs***, 547 U.S. 90, 99 (2006)).

¶14 Simply put, there is no rigid Fourth Amendment requirement that a warrant be physically given to the subject of a search to comply with the Fourth

Amendment's standard of reasonable execution. Williams has not demonstrated that drawing his blood after showing him the warrant constituted unreasonable execution of the warrant under the circumstances of his case.

¶15     Next, Williams argues that WIS. STAT. § 968.15(1), which provides that "[a] search warrant must be executed and returned not more than 5 days after the date of issuance," requires physical service of a warrant for it to be "executed." In arguing that the statute imposes a physical service requirement, Williams relies exclusively on an explanatory note from the Wisconsin Judicial Council. The note states:

> Current law has no provision on the execution of a search warrant. It is believed that there should be some reasonable period in which a warrant should be executed and returned. Experience teaches that normally search warrants have little effect if they are not promptly served. They should not be held by an officer and served at [the officer's] whim. Various states have adopted times different than the federal requirement in F.R.Cr.P. 41(d) which has a 10-day limitation. The Council, after consultation with law enforcement authorities, felt 5 days was a reasonable period.

Judicial Council Note, 1969, WIS. STAT. § 968.15.

¶16     This note is insufficient to import a physical service requirement into the statutory text. The note provides that, under the statute, a warrant must be "executed" within five days. We have interpreted the term "execution" in the context of WIS. STAT. § 968.15 before, and we have concluded that it means the "search for and seizure of the items designated in the warrant." *State v. Drachenberg*, 2023 WI App 61, ¶¶25, 32, 409 Wis. 2d 738, 998 N.W.2d 566. We noted that this definition is consistent with the ordinary understanding of the term in context, the language in closely related statutes, and the "evident purposes of ... § 968.15," which, as shown by the note on which Williams relies, includes

avoidance of unreasonable delay in carrying out searches pursuant to validly issued warrants. *Id.*, ¶¶18-23, 32. Williams makes no attempt to show that physical service should be read into the term "execute" as an additional required element based on the statutory text, the term's ordinary meaning, or any other tool of statutory interpretation. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶¶45-51, 271 Wis. 2d 633, 681 N.W.2d 110. Williams's statutory argument therefore fails.

¶17    Finally, Williams argues that due process requires physical service of a search warrant based on the concepts of notice and fundamental fairness. None of his cited authority is persuasive. In *Erotomic*, for example, this court concluded that the defendants were not deprived of due process when the State complied with a statutorily authorized means of providing notice of an action commenced against them rather than serving a summons. *State v. Erotomic*, 87 Wis. 2d 536, 540, 275 N.W.2d 160 (Ct. App. 1979). Here, as discussed above, there is no statutory requirement for physical service (or advance notice) of a search warrant. Courts have repeatedly recognized that, under some circumstances, a search pursuant to a valid warrant may be executed without notice to the person whose person or property is being searched. But in this case, Williams has presented no evidence that he was not given notice of the warrant when Hintze showed it to him before the blood draw.

¶18    Nor does failing to hand a person a search warrant "defeat[] the whole purpose of having a warrant in the first place," as Williams asserts. The purposes of a warrant authorizing a blood draw are to "ensure that a search is not carried out unless a neutral magistrate makes an independent determination that there is probable cause to believe that evidence will be found," and to "limit[] the intrusion on privacy by specifying the scope of the search." *Birchfield v. North*

*Dakota*, 579 U.S. 438, 469 (2016). Here, those purposes were served when Hintze obtained the warrant from a neutral magistrate, and the warrant limited the scope of the authorized search. Fundamental fairness does not also require that Williams be physically served with the warrant prior to the blood draw under the facts presented here.

¶19 Williams's failure to address the State's case law and arguments in a reply constitutes an implicit concession on these legal arguments. *See Apple Hill Farms Dev.*, 342 Wis. 2d 162, ¶14.

¶20 In sum, Williams has not demonstrated clear error in the circuit court's finding that an officer showed him the search warrant authorizing a blood draw prior to executing that warrant, and we are not persuaded that either constitutional standards or WIS. STAT. § 968.15 impose a requirement for physical service of the warrant under these circumstances. We affirm.

*By the Court*.—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.